**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
 JANE DOE,

                                                    Civil Case No:

                         Plaintiff,


    -against-


 HCL AMERICA, INC.,                        <u>**COMPLAINT**</u>
 HCL TECHNOLOGIES LTD,
 HCL AMERICA SOLUTIONS, INC.,
 KEITH CAPERS, individually,               Plaintiff Demands a
 MOISES SANTIAGO, individually,            Trial by Jury
 SUJEET LAHIRI, individually, and
 MAKINSON PIERRE-LOUINE, individually,

                         Defendants.
--------------------------------------------------------X


        Plaintiff JANE DOE (hereinafter referred to as "Plaintiff" or "DOE"") by and through

her attorneys DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants, HCL

AMERICA, INC. (hereinafter referred to as "HCL AMERICA"), HCL TECHNOLOGIES LTD

(hereinafter referred to as "HCL TECHNOLOGIES"), HCL AMERICA SOLUTIONS, INC.

(hereinafter referred to as "HCL AMERICA SOLUTIONS"), (hereinafter collectively referred to

as "HCL"), KEITH CAPERS (hereinafter referred to as "CAPERS"), individually, MOISES

SANTIAGO (hereinafter referred to as "SANTIAGO"), individually, SUJEET LAHIRI

(hereinafter referred to as "LAHIRI"), individually, and MAKINSON PIERRE-LOUINE,

(hereinafter referred to as "PIERRE-LOUINE") individually, (collectively referred to as

"Defendants") upon information and belief as follows:


<u>**NATURE OF CASE**</u>


        Plaintiff brings this action, charging that the Defendants violated Plaintiff's rights

pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), the American with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq ("ADA"), as amended by the Americans with Disabilities Act Amendments Act of 2008 ("the ADAAA"), , The Fair Labor Standards Act of 1938 ("FLSA"),  the Family and Medical Leave Act of 1993 ("FMLA"), the Administrative Code of the City of New York ("NYCHRL"), the executive laws of the State of New York, New York Labor Laws, based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), and 28 U.S.C. §1367, seeking declaratory relief and damages to redress the injuries Plaintiff has suffered as a result of, *inter alia*, unpaid overtime, disability discrimination, FMLA interference, sex/gender discrimination, sexual harassment, hostile work environment, retaliation, and wrongful termination by Defendants.

## JURISDICTION AND VENUE

1. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII, FMLA, FLSA and ADA.  The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto. Additionally, the Court has supplemental jurisdiction under the State and City laws of New York.

2. Plaintiff submitted a Charge of Discrimination to the U.S. Equal Employment Opportunity Commission ("EEOC") on or about July 25, 2017.

3. On or about August 29, 2018, Plaintiff received a Right to Sue Letter from the EEOC.

4. Plaintiff satisfied all administrative prerequisites and is filing this case within the applicable Statute of Limitations.

5. Venue is proper in this court, as the events giving rise to this action arose within the Southern

District of New York.

**PARTIES**

6.  Plaintiff DOE is an individual twenty-three year old woman who is a resident of the State of New Jersey.

7.  At all times material, Defendant HCL AMERICA is a foreign business corporation duly existing by the virtue and laws of California that does business in the state of New York.

8.  At all times material, Defendant HCL TECHNOLOGIES, is a foreign business corporation duly existing by the virtue and laws of California that does business in the state of New York.

9.  At all times material, Defendant HCL AMERICA SOLUTIONS, is a foreign business corporation duly existing by the virtue and laws of India that does business in the state of New York.

10. Defendant HCL provides consulting, business process services, and information technology services.

11. At all times material, Defendant CAPERS was and is a manager of Defendant HCL.

12. At all times material, Defendant CAPERS had supervisory authority over Plaintiff with regards to her employment, controlling many tangible aspects of Plaintiff's job duties, including holding the power to hire and fire Plaintiff.

13. At all times material, Defendant SANTIAGO was and is a manager for Defendant HCL.

14. At all times material, Defendant SANTIAGO had supervisory authority over Plaintiff with regards to her employment, controlling many tangible aspects of Plaintiff's job duties, including holding the power to hire and fire Plaintiff.

15.  At all times material, Defendant LAHIRI was and is a Senior Manager of Human Resources for Defendant HCL.

16. Defendant LAHIRI had supervisory authority over Plaintiff with regards to her employment, controlling many tangible aspects of Plaintiff's job duties, including holding the power to hire and fire Plaintiff.

17. At all times material, Defendant PIERRE-LOUINE was and is an IT technician of Defendant HCL.

## STATEMENT OF FACTS

18. At all times material, Plaintiff suffered and continues to suffer from the following disabilities: epilepsy, an incurable neurological disorder; Attention Deficit Hyperactivity Disorder ("ADHD"); frequent migraines from epilepsy medication; anxiety; and a torn meniscus that required six surgeries and a partial transplant to repair causing Plaintiff to have limited mobility, (hereinafter collectively referred to as "disabilities").

19. At all times material, Plaintiff took prescribed medication for her epilepsy, migraines, and anxiety.

20. At all times material, Plaintiff suffered from and continues to suffer from the aforementioned medical conditions that qualify as disabilities in accordance with the Americans with Disabilities Act ("ADA").

21. At all times material, Defendants' Human Resources department were made aware of Plaintiff's disabilities.

22. In or around July 2014, Defendant HCL hired Plaintiff to be a member of HCL's IT Department.

23. Defendant HCL assigned Plaintiff to Defendant HCL's Compucom account in New York, New York.

24. In or around February 2015, Defendant HCL promoted Plaintiff from Junior Analyst to Senior Analyst and transferred Plaintiff to the IT department at Defendant HCL's Deutsche Bank Account in New York, New York.  Defendant HCL assigned Plaintiff to the Mobile Services division (hereinafter referred to as "Mobile Services"), because Mobile Services did not require any heavy lifting and/or repairs on computers on or underneath desks.

25. In or around September 2015, Defendant HCL also stationed Defendant PIERRE-LOUINE at Deutsche Bank located at 60 Wall Street New York, New York 10005.

26. In or around September 2015, Defendant PIERRE-LOUINE unwelcomely and consistently patted Plaintiff's back.

27. Defendants' employee, PETER ECKERD (hereinafter referred to as "ECKERD") and Plaintiff's manager, was informed by Plaintiff that Defendant PIERRE-LOUINE violated a personal boundary.

28. Manager ECKERD failed to take any reasonable action to remedy Plaintiff's complaint.

29. In or around April 2015, Defendant PIERRE-LOUINE asked Plaintiff for a hug.  Plaintiff said **"no."** Defendant PIERRE-LOUINE pressured Plaintiff and asked **"why you have to be like that?"**   PIERRE-LOUINE would not leave until Plaintiff embraced him so Plaintiff reluctantly gave PIERRE-LOUINE an open hug.

30. In or around May 2015, Defendant HCL hired Defendant CAPERS as the Operations Manager for HCL's IT department and made CAPERS Plaintiff's Supervisor.

31. In or around May 2015, Defendant CAPERS was made aware of Plaintiff's ADHD disability (a mental impairment that is covered by the ADA) when Plaintiff requested for a reasonable

accommodation brought on by her ADHD.  Plaintiff's ADHD disability affected and/or substantially limited Plaintiff's focus, concentration, and hyperactivity.

32. Plaintiff requested a reasonable accommodation of reducing the amount of tasks assigned to her with a short turnaround time or providing advance notice of deadlines.

33. Defendant CAPERS denied Plaintiff's reasonable accommodation request and told Plaintiff **"I do not believe ADHD is a 'thing'. Doctors are just saying that to get your money. I don't care what you do or how you do it, but you need to make sure you complete all of your tasks prior to leaving the office."**

34. The above-mentioned comment by Defendant CAPERS is an example of the discriminatory intimidation, ridicule and insult that Defendant CAPERS subjected Plaintiff to regularly throughout her employment with Defendant HCL.

35. Defendant CAPERS also failed to engage in an interactive dialogue to assess whether Plaintiff's disability could be reasonably accommodated.

36. Defendant CAPERS knowingly assigned Plaintiff voluminous tasks that could have been distributed to Plaintiff's coworkers causing Plaintiff to feel overwhelmed and anxious.

37. Between May 2015 to April 2016, due to Defendant CAPERS failure to accommodate Plaintiff's disability, Plaintiff began working hours in excess of forty (40) a week.

38. Defendant CAPERS denied Plaintiff's request for overtime for the hours Plaintiff worked in excess of forty (40) hours a week.

39. Defendant HCL knowingly failed to pay Plaintiff for the number of hours Plaintiff worked in excess of forty (40) a week.

40. Without a reasonable accommodation, Plaintiff's workload continued to pile up and Plaintiff had to work from home and/or stay late without compensation.

41. Plaintiff was working on average approximately sixteen (16) hours each day, during holidays, and would continue working from home in order to complete all of the tasks assigned by Defendant CAPERS.

42. Defendant HCL discriminated against Plaintiff on the basis of her disability, failed to accommodate Plaintiff's request for a reasonable accommodation, failed to have an interactive dialogue regarding Plaintiff's disability, and subjected Plaintiff to a hostile work environment.

43. In or around April 2016, Defendant HCL's discriminatory treatment and failure to accommodate Plaintiff's disabilities caused Plaintiff to experience high levels of anxiety and fear of termination which ultimately led to Plaintiff suffering a major anxiety attack at work.

44. At that same time, Plaintiff sought treatment from Dr. Vazquez who told Plaintiff that her anxiety was worsening and that Plaintiff was exhibiting signs of severe depression. Dr. Vazquez recommended Plaintiff see a psychiatrist.

45. Plaintiff attended only one psychiatrist appointment, due to her fear over the repercussions of taking time off work.

46. In or around May 2016, Plaintiff gave HCL's Human Resources and Defendant CAPERS, a copy of her doctor's note for her exacerbated torn meniscus and migraines.

47. Defendant CAPERS frequently questioned Plaintiff about Plaintiff's disabilities and ignored Plaintiff when she consistently told him to discuss her disabilities with HCL's Human Resources who were aware of the situation.

48. On or about May 12, 2016 Plaintiff went on medical leave (under the Family and Medical Leave Act "FMLA") for a partial meniscus transplant.  Recovery from meniscus transplants generally take a year or longer.  However, Plaintiff was afraid to lose her job at HCL so she

returned to HCL on or about September 23, 2016, but with medical clearance to only work in the less physically intensive Mobile Services Division. Defendant HCL also promised Plaintiff that she would be able to return to her position in the Mobile Services Division.

49. However, upon Plaintiff's return, Defendant CAPERS purposefully placed Plaintiff in the physically demanding Computers Division instead of the Mobile Services Division.

50. Plaintiff reminded CAPERS that she could not work in the Computers division because she was unable to squat, bend, or lift anything over five (5) lbs.  Plaintiff even gave CAPERS a doctor's note reaffirming her need for a reasonable accommodation. Defendant CAPERS then told Plaintiff **"what is the purpose of having you if you can't do anything?!"**

51. Plaintiff asked Defendant CAPERS if she could simply return to the Mobile Services Division where she had been working previously. Defendant CAPERS ignored Plaintiff's request and gave her the option of working in the Computers division or be terminated.

52. Defendants completely disregarded Plaintiff's reasonable accommodation request and forced Plaintiff to compromise her health working in the Computers division.  Plaintiff went home every day in severe pain and in need of pain relief medication.

53. Additionally, Defendants did not permit Plaintiff to leave work early on days she was scheduled for physical therapy sessions.

54. Plaintiff's co-workers recognized Plaintiff was in pain so they switched their tasks that did not involve any heavy lifting with hers. However, CAPERS would then spitefully and unnecessarily switch the heavier tasks back to Plaintiff.

55. This further demonstrates that CAPERS could have, but refused to provide Plaintiff with a reasonable accommodation.

56. Defendant HCL discriminated against Plaintiff on the basis of her disabilities, failed to provide Plaintiff with a reasonable accommodation, subjected Plaintiff to a hostile work environment, and retaliated against Plaintiff for making a reasonable accommodation request, and for taking medical leave under the FMLA.

57. Between March 2016 and September 2016, Defendant PIERRE-LOUINE found Plaintiff on the WhatsApp application and sent Plaintiff a message that said "HI."

58. On or about September 26, 2016, Defendant PIERRE-LOUINE walked into the kitchen where Plaintiff was alone, microwaving her lunch. **Defendant PIERRE-LOUINE went up to Plaintiff, stood behind her, and put his arms around Plaintiff's waist and gave her a hug. Defendant PIERRE-LOUINE then slid his hands down to Plaintiff's buttocks onto her back pockets. Defendant PIERRE-LOUINE then kissed Plaintiff's neck.**

59. Plaintiff immediately told Defendant PIERRE-LOUINE, **"don't touch me"** and moved away from Defendant PIERRE-LOUINE.  Plaintiff then proceeded to the cafeteria to join the rest of her lunch group. She felt violated and embarrassed.

60. Plaintiff told Defendant HCL's employee and former Manager JAMIE ORTIZ via text message about Defendant PIERRE-LOUINE's sexual misconduct.

61. Defendant HCL discriminated against Plaintiff on the basis of her sex/gender and caused Plaintiff to suffer from sexual harassment.

62. On or about December 5, 2016, at the end of the day, Plaintiff and Defendant PIERRE-LOUINE were the last employees at the office.  Plaintiff was sitting at her desk and Defendant PIERRE-LOUINE was packing his bag.

63. Defendant PIERRE-LOUINE said "**you have something on your shirt**." As Plaintiff looked down to see what it was, HCL'S Employee, PIERRE-LOUINE suddenly grabbed Plaintiff's

tank top and pulled it down to look into Plaintiff's shirt. He then put his hands around Plaintiff's waist in an attempt to bring her body close to his. Plaintiff immediately yelled "**no!**" in protest, but Defendant PIERRE-LOUINE continued forcing himself onto her trying to kiss Plaintiff. Plaintiff quickly moved to try and escape Defendant PIERRE-LOUINE's firm grasp causing Defendant PIERRE-LOUINE to kiss her shoulder instead of her lips.

64. Defendant PIERRE-LOUINE's sexually deviant behavior caused Plaintiff to feel humiliated and violated. Plaintiff immediately contacted Defendant SANTIAGO to complain about the incident.

65. Defendant SANTIAGO told Plaintiff "**I don't know if there is anything we can do. Maybe it is okay in his country and he thinks he can do it here.**"

66. Defendant HCL ignored Plaintiff's complaint and left Plaintiff with no redress.

67. Defendant HCL discriminated against Plaintiff on the basis of her sex/gender, subjected Plaintiff to sexual harassment and knowingly permitted PIERRE-LOUINE to sexually harass and assault Plaintiff.

68. On or about December 6, 2016, Plaintiff filed a complaint against Defendant PIERRE-LOUINE to Defendants SANTIAGO and CAPERS. She also wrote a separate email, requesting to have Defendant PIERRE-LOUINE moved away from her.

69. Defendant CAPERS moved Defendant PIERRE-LOUINE to the twelfth floor and told Plaintiff that "if you need anything from the twelfth floor, have one of the other guys bring it down to you."

70. However, Defendant CAPERS allowed Defendant PIERRE-LOUINE to go to Plaintiff's floor because it "was part of his work."

71. Defendants ignored Plaintiff's requests and rather than take any reasonable action to remedy Plaintiff's complaints, instead they further endangered Plaintiff's safety.

72. On or about December 7, 2016, Plaintiff emailed Defendant HCL's employee, LAHIRI for help because Defendants CAPERS and SANTIAGO were not taking her initial complaint or extreme discomfort seriously.

73. On or about December 9, 2016, Defendant HCL sent Plaintiff home while they conducted an investigation based on her initial complaint against Defendant PIERRE-LOUINE. Defendant HCL sent Defendant PIERRE-LOUINE home after Plaintiff.

74. Defendant HCL did not contact Plaintiff during the investigation and whenever Plaintiff called to inquire about the status of the investigation HCL would tell her to wait until the investigation was completed.

75. On or about February 21, 2017, almost three months later, Defendant HCL contacted Plaintiff via email to tell her that based on the findings of their investigation, they decided to close the case.

76. Defendant HCL discriminated against Plaintiff on the basis of her sex/gender, subjected her to a hostile environment and sexual harassment.

77. Defendant HCL never provided Plaintiff a copy of their report and/or findings from their investigation.

78. In or around March 2017, Plaintiff returned to work to discover that Defendant CAPERS did not have anyone fill in for her while she was out during the investigation. Defendant CAPERS retaliated against Plaintiff by reprimanding her for the escalation of outstanding work and told Plaintiff that she was not doing enough.

79. On or about March 7, 2017, Plaintiff decided she could not suffer in pain any longer and emailed Defendant SANTIAGO regarding her concern that Defendant CAPERS prevented her from working in the Mobile Services division and forced her to work in the Computer division despite her reasonable accommodation request and worsening medical condition.

80. On or about March 8, 2017, Defendant SANTIAGO copied CAPERS on an email to Plaintiff, stating, "that is unfortunately CAPERS's role," and allowed CAPERS to continue to discriminate against Plaintiff.

81. Shortly after Plaintiff complained to SANTIAGO, CAPERS retaliated against Plaintiff by assigning her tasks that involved carrying heavy machinery and bending under desks to fix computers.

82. On or about March 22, 2017, Defendant HCL wrongfully terminated Plaintiff stating that they were letting her go "due to a reduction of work."

83. Defendant HCL's reason for terminating Plaintiff is merely pretextual because a couple of weeks later, Defendant HCL hired two employees to replace Plaintiff and less than a month later, Defendant HCL posted Plaintiff's position on a job board.

84. Between March 22, 2017 and May 8, 2017, Defendants discriminatory and retaliatory conduct and unlawful termination caused Plaintiff to experience extreme psychological distress which ultimately led to Plaintiff suffering from a non-epileptic seizure on May 8, 2017.

85. On or about May 8, 2017, Plaintiff was diagnosed with Post Traumatic Stress Disorder due to the severe stress Defendants caused Plaintiff to suffer during the preceding months.

86. As a result of Defendants actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

87. As a result of Defendants discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

88. HCL discriminated against Plaintiff on the basis of her disabilities and retaliated against Plaintiff for attempting to exercise her protected rights regarding her disabilities and because Plaintiff was asking for a reasonable accommodation in connection with her disabilities.

89. In addition to discriminating against Plaintiff on the basis of her disabilities and subjecting Plaintiff to a hostile work environment, HCL discriminated against Plaintiff on the basis of sex/gender and knowingly subjected Plaintiff to further sexual harassment, sexual assault, and endangered Plaintiff's safety.

90. HCL knowingly disregarded Plaintiff's complaints about sexual harassment, discrimination and retaliation but failed to take any immediate or reasonable actions.

91. Defendant HCL knowingly failed to compensate Plaintiff for the hours she worked in excess of forty (40) hours.

92. Defendant HCL knowingly permitted Defendants PIERRE-LOUINE and CAPERS to discriminate against Plaintiff on the basis of her sex/gender and disabilities and subject her to a hostile work environment.

93. Defendant HCL retaliated against Plaintiff for engaging in protected activities and taking FMLA leave, and subjected Plaintiff to multiple adverse employment actions including termination.

94. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary

losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

95. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

96. As Defendant HCL's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

97. The above are just some of the examples of unlawful discrimination and retaliation to which the Defendants subjected the Plaintiff on a frequent and ongoing basis throughout Plaintiff's employment.

98. Plaintiff claims a continuous practice of discrimination and claims a continuing violations and makes all claims herein under the continuing violations doctrine.

99. Plaintiff claims unlawful termination and hereby requests reinstatement to her position.

100. Plaintiff claims alternatively (in the event Defendants claim so or that the Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors. Furthermore, in such case, Plaintiff claims that Defendants owed and breach its duty to Plaintiff to prevent the harassment/discrimination/retaliation and is liable therefore for negligence.

101. Plaintiff has documents to further support the claims made herein.

102. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

**AS A FIRST CAUSE OF ACTION
FOR DISCRIMINATION UNDER TITLE VII**

**(Not Against Individual Defendants)**

103. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) [Section 703] provides that it shall be an unlawful employment practice for an employer: "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . ."

104. Defendant HCL engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by discriminating against Plaintiff on the basis of her sex/gender along with creating a hostile work environment, retaliating and unlawful terminating Plaintiff based upon her membership in the aforementioned protected classes.

105. Plaintiff hereby makes a claim against Defendant HCL under all of the applicable paragraphs of Title VII.

106. Defendant HCL violated the above and Plaintiff suffered numerous damages as a result.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII
### (Not Against Individual Defendants)

107. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

108. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) [Section 704] provides that it shall be an unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has

made a charge, testified, assisted or participated in any manner in an investigation,

proceeding, or hearing under this subchapter."

109. Defendant HCL engaged in unlawful employment practice prohibited by 42 U.S.C.

§2000e et seq., by retaliating against Plaintiff with respect to the terms, conditions or

privileges of her employment because of her opposition to the unlawful employment

practices of Defendant HCL.

110. Defendant HCL violated the above and Plaintiff suffered numerous damages as a result.

## AS A THIRD CAUSE OF ACTION
## DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT
### (Not Against Individual Defendants)

111. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of

this Complaint.

112. Plaintiff claims Defendant HCL violated Title I of the Americans with Disabilities Act of

1990 (Pub.L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the

United States Code, beginning at section12101.

113. SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered entity shall

discriminate against a qualified individual with a disability because of the disability of such

individual in regard to job application procedures, the hiring, advancement, or discharge of

employees, employee compensation, job training, and other terms, conditions, and

privileges of employment."

114. Defendant HCL violated the above and Plaintiff suffered numerous damages as a result.

## AS A FOURTH CAUSE OF ACTION
## RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT
### (Not Against Individual Defendants)

115. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of

this Complaint.

116. SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

117. Defendant HCL violated the above and Plaintiff suffered numerous damages as a result.

**AS A FIFTH CAUSE OF ACTION
FOR VIOLATIONS OF THE
FAMILY AND MEDICAL LEAVE ACT – 29 U.S.C. § 2601 ET SEQ.
(Not Against Individual Defendants)**

118. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

119. Section 2612 of the Family Medical Leave Act (FMLA) states in pertinent part:

(a) In general

(1) Entitlement to leave

Subject to section 2613 of this title, an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:

(A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.

(B) Because of the placement of a son or daughter with the employee for adoption or foster care.

(C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.

(D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

(E) Because of any qualifying exigency (as the Secretary shall, by regulation, determine) arising out of the fact that the spouse, or a son, daughter, or parent of the employee is on covered active duty (or has been notified of an impending call or order to covered active duty) in the Armed Forces.

120. Defendant HCL violated the above and Plaintiff suffered numerous damages as a result.

**AS A SIXTH CAUSE OF ACTION**
**FOR RETALIATION AND INTERFERENCE UNDER**
**THE FAMILY AND MEDICAL LEAVE ACT – 29 U.S.C. § 2601 ET SEQ.**
**(Not Against Individual Defendants)**

121. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint as if the same were set forth herein fully at length.

122. § 2615 of the FMLA states as follows:

Prohibited acts

(a) Interference with rights

(1) Exercise of rights

It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of
or the attempt to exercise, any right provided under this subchapter.

(2) Discrimination

It shall be unlawful for any employer to discharge or in any other manner discriminate
against any individual for opposing any practice made unlawful by this subchapter.

123. Defendant HCL unlawfully interfered, restrained, and denied Plaintiff's right to exercise

and attempt to exercise his rights under the above section and discriminated and retaliated

against Plaintiff for opposing Defendant HCL's unlawful employment practice and

attempting to exercise her rights.

124. Defendant HCL violated the above and Plaintiff suffered numerous damages as a result.

**AS A SEVENTH CAUSE OF ACTION**
**UNDER THE FAIR LABOR STANDARD ACT**
**OVERTIME**
**(Not Against Individual Defendants)**

125. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

Complaint as if more fully set forth herein at length.

126. Defendant HCL willfully employed Plaintiff in the aforementioned enterprise for work weeks longer than 40 hours and failed to compensate Plaintiff for her employment in excess of 40 hours per week at a rate of at least one and one-half times the rate at which she was employed.

127. Defendant HCL failed to pay overtime wages to Plaintiff as required by the FLSA, 29 U.S.C. §201 et seq. and its implementing regulations.

128. Defendant HCL's failure to pay Plaintiff overtime pay in accordance with the FLSA, was a direct violation of the FLSA, specifically 29 U.S.C. §207.

129. Defendant HCL failure to pay proper overtime wages for each hour worked over 40 per week was willful within the meaning of 29 U.S.C. §255.

130. Defendant HCL failure to comply with the FLSA caused Plaintiff to suffer loss of wages.

**AS AN EIGHTH CAUSE OF ACTION**
**VIOLATION OF NEW YORK WAGE AND HOUR LAW**
**and VIOLATION OF Title 12 NYCRR § 142-2.2**
**OVERTIME RATE**
**(Not Against Individual Defendants)**

131. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

132. Plaintiff was an employee of Defendants within the meaning of New York Wage Regulations, specifically NYCRR Labor § 138 et seq.

133. Defendants failed to pay Plaintiff a premium for hours worked in excess of 40 hours per week.

134. Defendant HCL violated Plaintiff's rights to overtime pay under Title 12 NYCRR 142-2.2.

135. Defendant HCL also failed to pay Plaintiff a premium/additional amount for hours worked

in excess of 10 hours per day.

136. On account of such violations, Defendant HCL is liable to Plaintiff for actual, statutory

and liquidated damages.

**AS A NINTH CAUSE OF ACTION**
**SPREAD OF HOURS COMPENSATION**
**UNDER NEW YORK LABOR LAW**
**(Not Against Individual Defendants)**

137. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of

this Complaint as if set forth more fully herein.

138. Defendant HCL willfully violated Plaintiff's rights by failing to pay Plaintiff an additional

hour of pay at minimum wage for each day worked more than ten (10) hours, in violation

of the New York Minimum Wage Act and its implementing regulations, N.Y. Labor Law

§§ 650 et seq.; 12 N.Y.C.R.R. § 142-2.4.

139. Due to Defendant HCL's New York Labor Law violations, Plaintiff is entitled to recover

from Defendant HCL for her unpaid spread of hours compensation, reasonable attorneys'

fees, and costs of this action pursuant to N.Y. Labor Law § 663 (1).

**AS A TENTH CAUSE OF ACTION**
**VIOLATION OF NEW YORK WAGE ORDER**
**EMPLOYEE RECORDS**
**(Not Against Individual Defendants)**

140. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of

this complaint.

141. Defendant HCL failed to keep employee-specific records documenting, *inter alia,* actual

hours worked in each week, in violation of New York Labor Law § 195, 661, and 12

NYCRR 142-2.6.

142. Defendant HCL failed to furnish statements with pay and hour information to Plaintiff, in

violation of New York Labor Law § 195 and 12 NYCRR 142-2.7.

## AS AN ELEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER NEW YORK STATE LAW
### (Against All Defendants)

143. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this Complaint.

144. Executive Law §296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

145. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her disabilities, sex/gender, along with failing to provide Plaintiff with a reasonable accommodation, creating a hostile work environment, retaliating, and wrongful terminating Plaintiff based on her membership in the aforementioned protected classes.

146. Plaintiffs hereby make a claim against Defendants under all of the applicable paragraphs of New York State Executive Law § 296.

## AS A TWELFTH CAUSE OF ACTION
## FOR RETALIATION UNDER NEW YORK STATE LAW
### (Against All Defendants)

147. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this Complaint.

148. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or

discriminate against any person because [s]he has opposed any practices forbidden under this article."

149. Defendants engaged in an unlawful discriminatory practice by wrongfully retaliating against the Plaintiff.

## AS A THIRTEENTH CAUSE OF ACTION
## FOR AIDING & ABETTING UNDER NEW YORK STATE LAW
### (Against All Defendants)

150. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this Complaint.

151. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

152. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

## AS A FOURTEENTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

153. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

154. The Administrative Code of the Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

155. Defendants engaged in an unlawful discriminatory practice in violation of New York City

Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory

working conditions, and otherwise discriminating against the Plaintiff on the basis of her

disabilities and sex/gender.

156. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of

New York City Administrative Code Title 8.

157. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A FIFTEENTH CAUSE OF ACTION FOR RETALIATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (Against All Defendants)

158. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs

of this Complaint.

159. The New York City Administrative Code Title 8, §8-107(1) (e) provides that it shall be

unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise

discriminate against any person because such person has opposed any practices forbidden

under this chapter."

160. Each of the Defendants engaged in an unlawful discriminatory practice in violation of New

York City Administrative Code Tide 8, §8-107(1) (e) by discriminating against the Plaintiff

because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's

employer.

161. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of

New York State City Administrative Code Title 8.

162. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SIXTEENTH CAUSE OF ACTION: AID AND ABET UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (Against All Defendants)

23

163. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

164. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

165. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling, and coercing the above discriminatory, unlawful, and retaliatory conduct.

166. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

167. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SEVENTEENTH CAUSE OF ACTION FOR**
**INTERFERENCE WITH PROTECED RIGHTS**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Against All Defendants)**

168. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

169. New York City Administrative Code Title 8-107(19) Interference with protected rights states, in relevant part: It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

170. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS AN EIGHTEENTH CAUSE OF ACTION FOR SUPERVISORY LIABILITY UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

171. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

172. New York City Administrative Code Title 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor provides:

    A. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    B. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

        i.) The employee or agent exercised managerial or supervisory responsibility;

        ii.) The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

        iii.) The employer should have known of the employee's or agents discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

173. Defendants violated the above and Plaintiff suffered numerous damages as a result.

    **WHEREFORE**, Plaintiff demands judgment against all Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues to be tried.

Dated:  New York, New York
        November 22, 2018

                        **DEREK SMITH LAW GROUP, PLLC**



                  By:       /s/   Johnmack Cohen

                            Johnmack Cohen, Esq.
                            1 Penn Plaza, Suite 4905
                            New York, New York 10119
                            (212) 587-0760